FRANK L. STOWELL, Respondent, *v.* GEORGE F. HASLETT and GEORGE I. McINTOSH, Appellants.

(GENERAL TERM, FOURTH DEPARTMENT, SEPTEMBER, 1871.)

Where a referee's findings do not expressly negative an allegation of fraud in the complaint, and an inference that he has found upon it affirmatively would contradict and destroy the whole theory upon which he has determined the case, such an inference cannot be made.

A mortgage void between the parties may be removed, in equity, as an obstruction to the collection of a judgment recovered after execution of the mortgage, but for debt incurred prior to such execution.

But in such case it must appear that the mortgage is entirely void, and, as between the parties, constitutes no claim either in law or equity.

Pursuant to an unwritten agreement for sale of oil lands in Pennsylvania, the vendor made and delivered to the vendee a written instrument, supposed and intended by both to convey the title, but imperfect and inoperative in not containing the grantee's name; and the latter thereupon executed a mortgage for the price upon land in this State,—*Held*, that the grantee had a right in equity to compel the execution of a proper conveyance, and that the mortgage was valid as against judgment creditors of the mortgagor.

*Held*, further, that the contract was not executory, resting in parol, but executed.

Stowell *v.* Haslett.

Nor will equity, in such case, consider whether the bargain out of which the mortgage arose was advantageous to the mortgagor or otherwise. And it seems, that the mortgage, though based upon a contract void by the statute of frauds, could not be avoided by the mortgagor if the mortgagee was willing to perform.

APPEAL from a judgment entered in favor of the plaintiff, upon the report of a referee. The facts appear in the opinion.

*George T. Spencer*, for the appellants.

*Loveridge & Swift* and *D. H. Bolles*, for the respondent.

Present—MULLIN, P. J., JOHNSON and TALCOTT, JJ.

By the Court—JOHNSON, J. The plaintiff is the assignee of several judgments against the defendant Haslett, which are a lien upon the real estate of the judgment debtor. The action is brought to remove an encumbrance from the real estate of such debtor, which forms an obstruction to the full and complete execution of the judgments against such real estate. The encumbrance sought to be removed is a mortgage upon the farm of said judgment debtor for $3,500, executed by him to the other defendant, McIntosh, to secure the payment of that sum before the docketing of either of plaintiff's judgments, but subsequent to the creation of the debt on which the several judgments are founded. The grounds for the relief demanded, which are alleged in the complaint, are that the mortgage was given for a consideration wholly, or in great part, fictitious, and that the mortgagor and mortgagee conspired together, in the giving and taking of said mortgage, to defraud the creditors of the mortgagor, and to prevent the collection of the notes on which the plaintiffs' judgments are founded, and that said mortgage was executed by the mortgagor and received by the mortgagee in pursuance of such fraudulent contrivance and design. The defendants answer separately, each denying the fraud, and alleging that the mortgage was given to secure a *bona fide* debt, then due and owing, from the mortgagor to the mortgagee, and for no

other purpose. No question is made that the action is not properly brought, if the facts stated in the complaint are established by the evidence. It is a remedy which a court of equity will always give in aid of the lien of a judgment, and to enable the judgment creditor to enforce his lien. (*Clarkson* v. *De Peyster*, 3 Paige, 320; *Beck* v. *Burdett*, 1 id., 305.)

Upon the findings of fact by the referee, the allegations of fraud and fraudulent intent, on the part of the defendants, or either of them, are wholly unfounded and unsustained. He finds that the mortgage was made in pursuance of a *bona fide* agreement between the mortgagor and the mortgagee, by which the latter agreed to sell and the former to purchase an interest in certain leases of oil lands, which the mortgagee then held and owned in the State of Pennsylvania, for the price and sum of $4,000. It is found by the referee that the mortgage was given to secure the purchase-money on this sale, and that it had no other consideration. The mortgage is held by the referee to be nugatory and absolutely void, both in law and equity, on the ground that it was wholly devoid of any consideration, for the reason that the written transfer of the interest in and to the oil leases by the mortgagee was not sufficient to convey any interest therein to the mortgagor, and the mortgage was in performance of a void parol agreement.

It is suggested by the counsel for the plaintiff that in order to sustain the judgment the court here may infer that the referee found in favor of the fraud charged in the complaint, inasmuch as he has not expressly negatived that allegation by his finding, or found anything upon that question one way or the other. But this is not a case where such an inference can be drawn. It would contradict and destroy the whole theory on which the referee has confessedly determined the case. He has found and set forth the transaction in which the mortgage had its origin, and stated the precise grounds on which he adjudges it to be void. Besides, the plaintiff called both the defendants as witnesses to prove the issue on his part, and both testify unqualifiedly that it was not given with any

intention to hinder, delay or defraud creditors, but for the purpose only of securing the purchase-money and carrying out in good faith the contract which both intended should be, and then supposed was, a perfectly valid and binding transaction. The presumption, therefore, would be inconsistent with the evidence, and does not arise. The case must stand or fall upon a consideration of the grounds upon which the referee has placed his decision. If the mortgage, as between the parties, has no ground in law or equity to stand upon, but is a mere void thing, I do not see why the plaintiff, having a valid judgment, which is a lien upon the premises covered by the mortgage, may not have his action to remove it, as a cloud upon and an obstruction to the enforcement of his lien. The premises, upon the evidence, are scarcely of sufficient value to satisfy all the judgments, and with the cloud of this mortgage hanging over them would, at a public sale, be likely to yield little, if anything, to apply to the satisfaction of the judgments. In that view the case would be brought clearly within the principle which entitles a creditor to this species of relief in aid of his lien and its enforcement. And in such a case, too, though the incumbrance sought to be removed should be found to be void and of no effect, upon a state of facts wholly different from those set forth and alleged in the complaint as the ground of invalidity, the court would still retain the case and grant the relief if the questions upon which the invalidity is found to depend have been fully and . fairly tried, and no objection is made at the trial that the case made by the proof varies from that stated in the complaint. (*Belknap* v. *Sealy*, 14 N. Y., 143.) The only question which arises on review in this case is, whether the law is correctly decided on the facts proved. We are to examine the case, therefore, for the purpose of determining whether, upon the facts found by the referee, the mortgage in question is so far invalid and void that the plaintiff is entitled to have it removed as an impediment to the execution of his judgment.

To entitle the plaintiff to this right in such a case, it must appear, I think, as was held by the referee, that the mort-

gage is entirely void, and, as between the parties thereto, constitutes no claim or incumbrance, either in law or equity. It is to be observed that the parties claim it to be valid, and intended it should be so. The transaction in which it originated was a *bona fide* transaction in respect to purpose and intent. The mortgagee intended to part with his property, and supposed he had made a valid and effectual transfer of it, at what was intended and considered as a fair price. The mortgagor accepting the intended transfer as sufficient to vest in him the interest bargained for, and as a fulfillment and execution of the bargain on the part of the mortgagee, executes and delivers the mortgage in order to secure the payment of the purchase-price which he had agreed to pay and was willing to acknowledge his obligation to pay. The mortgage is in due form, and upon its face is a valid instrument to bind real estate. Both parties to the transaction acknowledge its validity, and insist that the mortgage was given upon a sufficient consideration, and does, as it was intended it should, bind the real estate covered by it. The plaintiff, on the contrary, is an entire stranger to the transaction between the mortgagor and mortgagee, having no interest in it, and no right to any voice in regard to it, except incidentally for his own protection. He has no right to intervene in the transaction for any other purpose. He may show, I think, if he can, that no relation of debtor and creditor ever existed between the parties, by reason of what they did, or undertook to do, which either law or equity will regard, or uphold and protect. But he must, I apprehend, go this length in a case of this kind, to entitle himself to this relief. He comes into a court of equity asking for equitable relief, and, unless he can maintain the position that equity will not protect the mortgagee and uphold his mortgage as against the mortgagor, he must fail, because the right of the mortgagee is the older of the two, and entitled to preference, each being in other respects equal. How is this? The bargain between the mortgagor and mortgagee out of which the mortgage sprung

was verbal, but it was not intended that it should rest in parol merely. It was like all other bargains whose terms are agreed upon verbally, but which are to be executed and carried out by written instruments afterward. The mortgagee, upon the terms being agreed upon, undertook to perform, and to have the agreement, so far as he was concerned, an executed agreement; and for that purpose made, signed and delivered to the mortgagor the writing set forth in the case, as follows: "For and in consideration of ($4,000) four thousand dollars, I hereby sell, assign and transfer all my right, title and interest in and to several leases owned by Olean Pine Tree Company, and a certain oil lease, No. 169, on the Smith farm, in Venango county, Pa." This was accepted by the mortgagor as a fulfillment and execution of the parol bargain on the part of the mortgagee. It is insisted, on the part of the plaintiff, that, inasmuch as the name of the assignee was not inserted in the written assignment, it was a mere nullity, and transferred nothing to the mortgagor, and was in no sense an execution of the parol bargain on the part of the mortgagee, and the referee seems so to have held. That it was intended to effect a transfer, and understood as having that effect by both parties, is quite certain. It may be admitted that if a transfer of such an interest can only be effected by deed, the instrument is defective, and would not operate to convey a title to the mortgagor, there being no grantee or assignee named. (*Chauncey* v. *Arnold*, 24 N. Y., 330; *Hibblewhite* v. *McMinne*, 6 Mees. & Welsb., 200.) These are cases, however, where the instruments were sought to be enforced by parties claiming rights under them. Here the mortgage sought to be removed is in due form and perfectly capable of being enforced, and the only question is as to its consideration. It is not shown that a deed is necessary in order to transfer an interest in such leases in Pennsylvania as the parties in this case bargained about. But I do not care to examine this question, because it seems to me perfectly clear that when this mortgage was executed, if not before, the mortgagor acquired a complete right in

equity to compel the mortgagee to execute such instrument, in proper form, as should be necessary to convey the interest bargained for. The omission of the assignee's name was obviously a mere oversight or mistake, which a court of equity would rectify between the parties, if necessary to effectuate the mutual intention. Equity regards that as already done which the parties agreed and intended to do.

Where an instrument is drawn and executed for the purpose of carrying into effect a contract, written or parol, previously entered into, and which, by mistake of the draftsman, in fact or in law, does not fulfill the intention of the parties, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement. (*Rogers* v. *Atkinson*, 1 Kelly R., 12; *Hunt* v. *Rousmanerie's Admrs.*, 1 Peters, 13, 14; Story's Eq., §§ 152–158.)

It is entirely clear, therefore, as matter of law, that the mortgage in question is not entirely void of consideration, as the referee held. For even conceding that the assignment did not effect a transfer of the interest of the mortgagee in the leases, as the parties supposed it had, the mortgage was given in execution and performance of an agreement which the parties, as between themselves, had the legal right to perform, if they saw fit; and, by giving the mortgage, the mortgagor acquired the right to enforce an assignment of the interest in the leases, if he had not already acquired it. The mortgage having been given to pay the price of the oil leases, the mortgagor could not avoid it, as long as the mortgagee was willing to transfer his interest, if he had not done so, even though the original bargain was void by the statute of frauds. (*Collier* v. *Coates*, 17 Barb., 471, and cases there cited.) The court, in a case like this, will never permit an inquiry to be made in regard to the question whether the bargain in which the mortgage in question originated was an advantageous one to the mortgagor, or otherwise; or, whether the bargain upon which the notes were given, which are the foundation of the plaintiffs' judgments, was not more advantageous to him. Both the notes and the mortgage

were given upon a purchase by him of some interest in oil lands, or leases of oil lands, and in each case it is to be presumed he gave, or agreed to give, what he considered the interest bargained for reasonably worth at the time of his purchase. Such an inquiry would be entirely without and beyond the scope of the issue, in a case of this kind. The question to be determined is, whether the apparent mortgage is a mere cloud and shadow, having the semblance merely of a valid incumbrance, but no legal or equitable substance or vitality. Should it appear even that it might be avoided between the parties at the election of one of them, but is good so long as both consent to it and are willing to be bound, and either is willing to do whatever may be necessary to be done to make it complete and absolute, this plaintiff cannot intervene in the matter, either to make the election to avoid, or to compel the party having the right to make it.

The obvious mistake of the referee in deciding the case was in treating the agreement between the defendants for the sale and purchase of the oil leases as an executory agreement, resting in parol at this time, and affected by the statute of frauds. But, upon his finding of facts, it was nothing of the kind.

It was an executed agreement, and was never intended to be one resting merely in parol. The assignment was executed and delivered by the mortgagee at the time the terms were verbally agreed upon; and the mortgage was executed and delivered by the mortgagor afterward, in execution and fulfillment of the agreement on his part.

All this was before the plaintiff's judgments, or either of them, had any existence. That it was once a parol agreement, executory in the sense of the terms and conditions having been agreed upon verbally, is of no sort of consequence to the determination of the legal or equitable rights of the parties now subsisting. The utmost which can be claimed is, that the mortgagee executed his part of the agreement imperfectly, and did not, in law, transfer the right and interest which he intended to transfer, so as to vest it in the mortgagor, by reason

of the mistake and oversight in omitting to insert the name of the assignee in the assignment. But this defect, if it be one, the parties may themselves, for aught I can see, rectify, by agreement between them, by the insertion of the name of the mortgagor, to make it what it was intended it should be, by both parties, at the time, and what it was supposed by them to be in law.

The plaintiff, certainly, cannot say they shall not do this, nor be heard to object to it, unless the mortgage in question is void until it is done. If it is void he may object, because his rights have attached, and, in that view, the effect of amending the assignment would be to create a new mortgage, relating back, and affecting his prior rights. But, as has been before said, the mortgage is not void, and it may be doubted whether it is even voidable between the parties. Certainly, the mortgagee may insist upon retaining and enforcing it, so long as he stands ready to perform on his part, if he has not already done so; and the mortgagor, by executing and delivering the mortgage, has acquired the legal right to compel the mortgagee in equity to make the assignment what it was intended it should be.

The judgment is, therefore, erroneous, and must be reversed, and judgment ordered for defendants for their costs.

Judgment reversed.